UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| UNION PACIFIC RAILROAD COMPANY | CIVIL ACTION |
| VERSUS | |
| MOREL G. LEMOINE DISTRIBUTORS, ET AL. | NO.: 04-00474-BAJ-EWD |

<u>RULING AND ORDER</u>

Before the Court is the **Motion for Summary Judgment (Doc. 50)** filed by Defendants Morel G. Lemoine Distributors, Martin G. Lemoine, and Veronica Lemoine. The Motion seeks the dismissal of all claims brought against these Defendants by Plaintiff due to the expiration of the applicable prescriptive period. (Doc. 50). Plaintiff filed a response, Defendants filed a reply, and Plaintiff filed a sur-reply. (Doc. 54; Doc. 55; Doc. 60). Oral argument is not necessary. For the following reasons, the Motion is **GRANTED**.

I. BACKGROUND

Plaintiff alleges that from 1995 through 1998, Defendants Martin G. Lemoine, Veronica Lemoine, and Keith James Glaser defrauded Plaintiff of up to $2 million through Plaintiff's dealings with Defendants' company, Moral G. Lemoine Distributors ("MGLD"), which is also named in the Complaint. (*See* Doc. 1 at pp. 1–4; Doc. 54 at p. 1). From 1995 to 1998, Martin G. Lemoine served as the president and CEO of MGLD. (Doc. 1 at p. 3). His wife, Defendant Veronica Lemoine, was also

1

employed by MGLD.[1] (*Id.*)Defendant Keith James Glaser[2] was employed by MGLD as a supervisor of the drivers that transport fuel. (*See Id.* at pp. 3–6; Doc. 54 at p. 2).

The alleged fraud stemmed from a contract that Plaintiff entered into with Defendants whereby MGLD agreed to purchase, deliver, and provide fueling services to Plaintiff at its Livonia, Louisiana railyard. (Doc. 1 at p. 2). As part of the agreement, Plaintiff agreed to reimburse the costs of purchasing and transporting the fuel. (*Id.*). Pursuant to the agreement, "field tickets," a type of receipt, would indicate the amount of fuel that was provided to a particular vehicle and the cost to be paid by Plaintiff. (Doc. 54 at pp. 1–2). An invoice would be generated by Defendants based on the field tickets. (*Id.* at p. 2).

Plaintiff alleges that MGLD's drivers were instructed by company officials to write the actual amount fueled in a manifest that was separate from the field tickets. (*Id.*). Defendant Keith Glaser would then allegedly prepare fraudulent field tickets containing phantom amounts of fuel that "padded" the field tickets so that MGLD received more money from Plaintiff than what was due. (*Id.*). The invoices would be prepared according to the phony numbers, rather than the genuine numbers written in the manifests. (*Id.*). In response to this scheme, Plaintiff filed suit against Defendants on July 12, 2004, almost six years after the alleged scheme had occurred. (*See* Doc. 1 at p. 3).

---

[1] The exact capacity in which Veronica Lemoine was employed by MGLD is not clear from the record, but Plaintiff asserts that it was a position in which she could have participated in the alleged tortious conduct. (Doc. 1 at pp. 5–6).

[2] This Defendant has not filed a motion for summary judgment.

Yet, Plaintiff first received a tip about the scheme in 1998 from District Attorney Ricky Ward of the 18th Judicial District of Louisiana. (Doc. 50-5 at p. 2). District Attorney Ward contacted Jim Watson, who was employed by Plaintiff as a Union Pacific Railroad Police Officer[3] working at the Livonia facility. Ward claimed that Defendant Martin G. Lemoine was "ripping off" Plaintiff by "padding" the fuel bills. (*Id.* at pp. 1–2). After receiving this information, Watson and Union Pacific Railroad Company Supervisory Police Officer Paul Miller Spoke with Paul Crocker, the Plaintiff's director of Locomotive Management in Livonia. (*See id.*) Crocker informed the officers that it would be very difficult to continue to steal from Plaintiff with the new process Plaintiff implemented since that time. (*Id.*).

After receiving the information in 1998, Plaintiff's officers did nothing. (*See* Doc. 50-6 at p. 29:24–25; *Id.* 30:1–8). Plaintiff did not attempt to investigate the matter. (*Id.*). Nor did Plaintiff invoke its contractual right to inspect the books of MGLD. (*See Id.*; Doc. 50-3 at p. 7).

Finally, in July of 2003, Plaintiff initiated an investigation of the alleged fraudulent activity. (Doc. 54 at p. 1). At this time, Rex Averill, a former employee of MGLD, provided Plaintiff with documents that revealed the scheme. (Doc. 54 at pp. 1–2). In July of 2004, almost a year after Averill presented additional evidence of the fraud, Plaintiff filed suit. (Doc. 1).

---

[3] At the time of the alleged fraud, Plaintiff had its own internal police unit. Its jurisdiction extended to any criminal offense involving railroad property. (Doc. 50-1 at p. 9).

3

## II. LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). "[W]hen a properly supported motion for summary judgment is made, the adverse party must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quotation marks and footnote omitted).

In determining whether the movant is entitled to summary judgment, the Court "view[s] facts in the light most favorable to the non-movant and draw[s] all reasonable inferences in [its] favor." *Coleman v. Hous. Indep. Sch. Dist.*, 113 F.3d 528, 533 (5th Cir. 1997). At this stage, the Court does not evaluate witness credibility, weigh evidence, or resolve factual disputes. *Int'l Shortstop, Inc. v. Rally's Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991). However, if the evidence in the record is such that a reasonable jury, drawing all inferences in favor of the non-moving party, could arrive at a verdict in that party's favor, the motion for summary judgment must be denied. *Id.* On the other hand, the non-movant's burden is not satisfied merely upon a showing of "some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

In sum, summary judgment is appropriate if, "after adequate time for discovery and upon motion, [the non-movant] fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that

4

party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Summary judgment will lie only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits if any, show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law." *Sherman v. Hallbauer*, 455 F.2d 1236, 1241 (5th Cir. 1972).

### III. DISCUSSION

Plaintiff lists several causes of action, all of which arise under Louisiana law. (Doc. 1 at pp. 7–12). Plaintiff also seeks to hold MGLD liable for intentional misrepresentation and a breach of the covenant of good faith in relation to the contract. MGLD, Martin G. Lemoine, and Veronica Lemoine filed the Motion *sub judice* arguing that the prescriptive period for these claims has run, and thus, warrant dismissal. (Doc. 50 at p. 1).

#### A. The Claims to Which the Prescriptive Period Applies

Defendants argue, and Plaintiff does not dispute, that all of the claims raised are delictual in nature, and so a one-year prescriptive period applies to each claim. (Doc. 50-1 at p. 4). Under Louisiana law, claims are classified as "offenses (delicts), quasi-offenses (quasi-delicts), contracts, and quasi-contracts." *Stewart v. Ruston La. Hosp. Co., LLC*, No. CV 3:14-0083, 2016 WL 1715192, at *4 (W.D. La. Apr. 27, 2016). Whether the action is delictual or contractual in nature is critical to determining the prescriptive period, because "[d]elictual actions have a one-year prescriptive period,

while contractual actions must be brought within ten years." *Id.* (*citing F.D.I.C. v. Barton*, 96 F.3d 128, 133 (5th Cir. 1996)).

"In determining whether a cause of action is contractual or delictual, Louisiana courts look to the nature of the duty that has been breached." *Carriere v. Jackson Hewitt Tax Serv. Inc.*, 750 F. Supp. 2d 694, 704 (E.D. La. 2010) (*citing Roger v. Dufrene*, 613 So. 2d 947, 948 (La. 1993)). The primary difference is that actions based on contracts are derived from lawful activity in which a *specific* obligation is violated, and delictual causes of action are derived from unlawful activity laced with intent, such as an intentional tort, in which a *general* duty owed to all persons is breached. *Stewart*, 2016 WL 1715192 at *5 (*quoting Thomas v. State Emp. Grp. Benefits Program,* 2005-0392 (La. App. 1 Cir. 3/24/06); 934 So. 2d 753, 757).

The Court is persuaded that all of the claims advanced by Plaintiff are delictual in nature, and therefore, a one-year prescriptive period applies. All claims that Plaintiff brings are based on the alleged fraudulent conduct of MGLD and its employees. (*See* Doc. 1 at pp. 7–12). In other words, as to each claim brought against Defendants, Plaintiff pleads an intentional action "laced with malice" that is part of a general duty Defendants would have owed to anyone they contracted with, not just an obligation specific to the fueling contract. Thus, Plaintiff's claims are delictual. Accordingly, a one-year prescriptive period applies to each of Plaintiff's claims.

### B. The Running of the Prescriptive Period and the Doctrine of *Contra Non Valentem*

Plaintiff argues that the one-year prescriptive period did not start running until 2003, when MGLD's former employee came to its headquarters and presented

6

evidence of the fraudulent activity. (Doc. 54 at pp. 1–2). Defendants argue that the prescriptive period began to run in 1998, when Plaintiff first received a tip from the District Attorney that Defendants were misrepresenting the fuel actually provided to Plaintiff. (*See* Doc. 50-1 at pp. 4–5, 11).

Louisiana law provides that "[p]rescription runs against all persons unless [an] exception is established by legislation." La. Civ. Code ann. art. 3467. Despite this, Louisiana courts have recognized the doctrine of *contra non valentem agere nulla currit praescriptio* ("*contra non valentem*") that tolls the prescriptive period when one of four situations are present. *Corsey v. State, Through Dep't of Corr.*, 375 So. 2d 1319, 1321–22 (La. 1979). Those situations are:

> (1) where there was some cause which prevented the courts or their officers from acting or taking cognizance of the plaintiff's action . . .
>
> (2) where there was some condition or matter coupled with the contract or connected with the proceeding which prevented the [plaintiff] from suing or acting . . .
>
> (3) where the [defendant] himself has done some act effectually to prevent the [plaintiff] from availing himself of his cause of action . . .

*F.D.I.C. v. Caplan*, 874 F. Supp. 741, 745 (W.D. La. 1995) (*citing Corsey*, 375 So. 2d at 1321–22). However, the Louisiana Supreme Court has recognized "[t]he fourth *contra non valentem* fact situation, known as the 'discovery rule,' . . . tolls prescription where the cause of action is not known or reasonably knowable by the plaintiff, even though [its] ignorance is not induced by the defendant." *Id.* "Because *contra non valentem* is an 'exceptional remedy' in direct contradiction to the articles in the Civil Code, it must be 'strictly construed.'" *Bayou Fleet, Inc, v. Bollinger Shipyards, Inc.*, 2015-0487 (La. App. 4 Cir. 7/21/16); 197 So. 2d 797, 806–07 (*citing*

7

*Harsh v. Calogero*, 615 So. 2d 420, 422 (La. Ct. App. 1993)). Plaintiff argues that the third and fourth situations of *contra non valentem* are present in this case, and therefore, the prescriptive period was tolled. (*See* Doc. 54 at pp. 5, 8).

*1. Defendants' Fraud and Tolling*

Plaintiff claims that the third situation, known as the fraud exception, applies, thus tolling the prescriptive period. (Doc. 54 at pp. 4–5). "This category is implicated only when (1) the defendant engages in conduct which rises to the level of concealment, misrepresentation, fraud or ill practice; (2) the defendant's actions effectually prevented the plaintiff from pursuing a cause of action; and (3) the plaintiff must have been reasonable in [its] inaction." *Marin v. Exxon Mobil Corp.*, 2009-2368 (La. 10/19/10); 48 So. 3d 234, 252 (internal citations omitted). In this case, Defendant only challenges the third requirement, arguing that the Plaintiff's inaction was unreasonable. (*See* Doc. 58-1 at p. 3).

As to the third element, the Louisiana Supreme Court has indicated that a plaintiff who is not diligent in investigating a potential claim does not act reasonably, and therefore, cannot avail itself of the doctrine. *See, e.g., Allstate Ins. Co. v. Fred's Inc.*, 2009-2275 (La. 1/29/10), 25 So. 3d 821 (holding that a lack of due diligence in factually investigating a claim prevented the party from relying on the third category of *contra non valentem* doctrine); *Jordan v. Employee Transfer Corp.*, 509 So. 2d 420, 423 (La. 1987) (a plaintiff will be deemed to have acted reasonably if, after some indication he has been harmed, he "seeks out those whom he believes may be responsible for a specific injury"); *Cartwright v. Chrysler Corp.*, 232 So. 2d 285, 287

8

(La. 1970) ("The rule that prescription does not run against one who is ignorant of the existence of facts that would entitle him to bring suit, applies only when such ignorance is not wilful [*sic*] and dues not result from negligence.").

The Court is persuaded that, even drawing all reasonable inferences in favor of Plaintiff, it is clear that Plaintiff was unreasonable in not investigating the fraud after receiving the tip from the District Attorney. The evidence reveals that the Union Pacific Railroad Police Force was notified in 1998 that MGLD was fraudulently padding bills given to Plaintiff. (Doc. 50-5 at p. 2). After receipt of this information, Plaintiff did *nothing* at that time to recover, or even investigate, the money that had been fraudulently converted. (*See* Doc. 50-6 at pp. 29:24–25, 30:1–8). Plaintiff's officers did not interview witnesses. They did not conduct an internal audit. They did not even attempt to invoke their contractual rights to inspect the books that MGLD kept on record that may have revealed evidence of Plaintiff's loss.

Plaintiff contends that it was reasonable to do nothing at that time to investigate the scheme, even though the scheme was potentially costing Plaintiff millions of dollars. It asserts that its police force did not have enough information to obtain as search warrant at that time. It further argues that it did not believe that any of the co-conspirators would have voluntarily provided the documents and records that showed evidence of fraud. Plaintiff also claims that Defendants would not have admitted to wrongdoing if confronted. (Doc. 54 at pp. 11–13). This argument misses the point. That some investigative actions may have proved fruitless does not relieve Plaintiff of the duty to act when it obtained notice of the scheme. Plaintiff

should have put forth some effort to discover evidence of the fraudulent conduct using customary and basic investigative techniques, such as interviewing witnesses or conducting internal audits. The Court is persuaded that despite having been notified of the possible crime as early as 1998, Plaintiff did not act reasonably by waiting several years before investigating the matter.

Accordingly, Plaintiff cannot avail itself of the third *contra non valentem* exception to prescription.

### 2. *The Discovery Rule,*

The other occasion in which *contra non valentem* may apply to this case is under the Discovery Rule, which Plaintiff argues should defeat the Motion for Summary Judgment. (Doc. 54 at p. 8). The Discovery Rule recognizes that "mere apprehension" is not enough for the prescriptive period to begin to run. (*Id.*). In opposition, Defendants assert that the call from the District Attorney began the running of the prescriptive period because it was enough to incite an inquiry into the alleged fraud of Defendants, and thus, was more than "mere apprehension." (Doc. 50-1 at pp. 6–7).

The Discovery Rule tolls a prescriptive period "where some cause of action is not known or reasonably knowable by the plaintiff, even though his ignorance is not induced by the defendant." *Specialized Loan Servicing, LLC v. January*, 2012-2668 (La. 6/28/13); 119 So. 3d 582, 585. Thus, "prescription commences on the date the injured party discovers or should have discovered the facts upon which his cause of action is based." *Id.* at 586. A plaintiff will be deemed to have constructive knowledge

of an injury, and therefore have discovered the injury, when the plaintiff has "enough information to excite attention and put the injured party on guard and call for inquiry." *Campo v. Correa,* 2001-2707 (La. 6/21102); 828 So. 2d 502, 510–11.

The Court is persuaded that in 1998, the Plaintiff possessed sufficient information to excite an inquiry into alleged tortious conduct. Therefore, Plaintiff cannot avail itself of the running of the prescriptive period pursuant to the fourth exception to the doctrine of *contra non valentem.*

For the foregoing reasons, the Court concludes that the prescriptive period has run on Plaintiff's claims against all Defendants and the case should be dismissed.

### IV. CONCLUSION

Accordingly,

**IT IS ORDERED** that the Motion for Summary Judgment (Doc. 50) by Defendants Morel G. Lemoine Distributors, Martin G. Lemoine, and Veronica Lemoine is **GRANTED**.

**IT IS FURTHER ORDERED** that all claims by Plaintiff against Defendant Morel G. Lemoine Distributors are **DISMISSED**.

**IT IS FURTHER ORDERED** that all claims by Plaintiff against Defendant Martin G. Lemoine are **DISMISSED**.

**IT IS FURTHER ORDERED** that all claims by Plaintiff against Defendant Veronica Lemoine are **DISMISSED**.

**IT IS FURTHER ORDERED** that all claims by Plaintiff against Defendant Keith James Glaser are **DISMISSED**.

Baton Rouge, Louisiana, this 21ST day of September, 2017.

_____
BRIAN A. JACKSON, CHIEF JUDGE
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA